UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH ERVIN FESAGAIGA,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>                                    Defendant. | Case No.:  20cv1420-NLS<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>**[ECF No. 14]** |

Plaintiff Ralph Ervin Fesagaiga ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), and seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for social security disability benefits under Title II of the Social Security Act.  Plaintiff filed a motion for summary judgment, Defendant filed an Opposition, and Plaintiff filed a Reply.  ECF Nos. 14, 15, and 16.  After considering the papers submitted, the administrative record, and the applicable law, for the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment, and directs the Clerk to enter Judgment affirming the decision of the Commissioner, and dismissing the action with

prejudice.[1]

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed a Title II application for Social Security Disability Insurance on July 12, 2017.  Administrative Record ("AR") 178-179.  He alleged an inability to work since October 27, 2016.  *Id*.  The Commissioner initially denied Plaintiff's claim on October 5, 2017, AR 116-120, and on reconsideration on January 25, 2018.  AR 122-127.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 19, 2019.  AR 30-90.  Plaintiff testified at the hearing where he was represented by counsel.  *Id*.  An impartial vocational expert also testified at the hearing.  *Id*.  On April 25, 2019, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff was not disabled under the Social Security Act.  AR 15-26.  The Appeals Council denied Plaintiff's request for review on May 29, 2020, AR 1-6, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  AR 1-3.  Plaintiff timely commenced this action in federal court.

### B.      Personal History and Medical Treatment

#### 1.      Personal History and Self-Reported Symptoms

Plaintiff is a 62-year-old man with an 11th grade education.  AR 47.  He is married with three grown children.  AR 46.  He lives in an apartment with his wife.  *Id*.  He most recently worked as a big rig truck driver for six months in 2016.  AR 48-50, 208-211.  In 2015, he worked part-time for a shipping company.  In the course of that employment, he says he pulled some ligaments in his back.  AR 59.  His last full-time job was as a security guard for U.S. Security Associates from 2009 through 2011.  AR 53-55.

Plaintiff bases his claims of disability on a detached retina in his left eye, lumbar degenerative disease, gout throughout his body, and curvature of the spine.  AR 92.

---

[1] The parties have expressly consented that all proceedings in this case may be heard and finally adjudicated by the undersigned magistrate judge. 28 U.S.C. § 646(c); Fed. R. Civ. P. 73; ECF No. 10.

Plaintiff testified at the hearing that he lost his job as a truck driver and stopped working due to his vision problems.  AR 57.  He also testified that his medications for gout and back pain make him feel sick, dizzy, and sleepy.  AR 64.  He said he generally takes Ibuprofen 800mg for pain, but also takes Tramadol when the pain reaches an 8 out of 10.  AR 64-65.  Plaintiff testified he has constant back pain on a level of 7-8 out of 10.  *Id.*  When asked how he spends his days, Plaintiff stated that "he doesn't do much," but then explained that he and his wife help with the care of their granddaughters (ages 8 and 10) who live nearby with his daughter and son-in-law.  AR 67-68.  He picks up the girls from home and drives them to school in the morning.  *Id.*  In the afternoon, he picks them up and brings them to his house, where he and his wife watch them until 5:00 p.m. or 6:00 p.m. when his daughter gets home from work.  *Id.*  Then, he drops them off at his daughter's house.  *Id.*  He also helps with household chores, shopping, and paying bills.  AR 69.  When his gout gets severe, he stays in bed and elevates his legs when his feet swell.  AR 70.  Although he has carpal tunnel syndrome primarily in his right hand, that does not interfere with his activities.  AR 72.

### C.   Medical Providers[2]

#### 1.   Dr. Peter Custis (Ophthalmology)

Plaintiff saw Dr. Peter Custis in October of 2016 for a retinal detachment of the left eye.  AR 323.  On October 30, 2016, Dr. Custis performed a surgical repair of the left eye with infusion of silicone oil and perfluoron.[3]  AR 316-318.  During surgery, he found a "giant retinal tear," which he successfully repaired.  *Id*.  In a progress note from December 5, 2016, Plaintiff reported seeing a bubble in his left eye and had some

---

[2] Plaintiff received most of his medical treatment from providers at Kaiser Permanente.

[3] Liquid perfluorocarbons are used intraoperatively for various procedures, including the repair of giant retinal tears.  Their properties make them helpful in proper positioning and reattachment of the retina. *Perfluorocarbon liquids in ophthalmology, https://pubmed.nlm.nih.gov.*

distorted vision.  AR 310.  On January 20, 2017, Dr. Custis performed another surgery to remove the silicone oil from Plaintiff's left eye.  AR 299-301, 419-424.  On March 14, 2017, Dr. Custis removed a cataract from Plaintiff's left eye.  AR  274-278.  At a follow-up examination on May 30, 2017, Dr. Curtis noted that Plaintiff had a stable retina with small bubbles of perfluoron.  Dr. Curtis observed that the bubbles were not causing any inflammation and the only way to remove them was through further surgery that could adversely impact Plaintiff's vision.  AR 272.

At another follow up appointment with Dr. Curtis on August 14, 2017, Plaintiff continued to report limited vision in his left eye, but Dr. Curtis did not recommend any further treatment.  AR 708.  At the hearing before the ALJ, Plaintiff reported he has prescription glasses, but does not wear them.  AR 74-75.  He stated that his vision is somewhat distorted, but he sees well enough to drive his grandchildren around in a car. AR 75-77.

## 2.   Dr. Cynthia Sierra (Primary Care)

Dr. Cynthia Sierra saw Plaintiff in the Primary Care Clinic at Kaiser Permanente on July 3, 2017, for a flare up of gout in his right knee.  AR 626-628.  Dr. Sierra advised him to continue with Indomethacin 50mg, but she did not recommend any further treatment at that time.  Plaintiff saw Dr. Sierra for back pain and a gout flare up on July 27, 2017.  AR 643.  Her physical exam of the lumbosacral spine indicated no local tenderness or mass.  She documented decreased range of motion and painfulness in the lumbosacral spine, but a straight leg raising test was negative on both sides, motor strength and sensation were normal, and reflexes were normal, as well as normal heel and toe gait.  *Id.*  Her impression was chronic low back pain.  *Id.*  She referred Plaintiff to Physical Medicine for lumbar x-rays and evaluation.  *Id*.

On January 20, 2019, Dr. Sierra completed a "Physical Residual Functional Capacity Questionnaire" in which she opined that Plaintiff has lumbar spondylosis with a fair prognosis.  AR 1778.  She noted he has "shooting pain in [the] bilateral lower lumbar spine radiating down both legs, pain 4-7/10, daily precipitated by walking or standing for

long periods." *Id.* She stated he has scoliosis, lumbar spondylosis, and disc herniation on MRI, as well a slow, antalgic gait and decreased range of motion. AR 1778. In terms of Plaintiff's physical capabilities, she opined he can lift less than 10 pounds frequently and up to 20 pounds occasionally; can sit, stand, and/or walk for less than 2 hours in an 8-hour work day; can rarely bend and squat; occasionally climb ladders and stairs; frequently twist; would have constant interference with attention and concentration during the work day due to pain or other symptoms; and would be absent from work more than 4 days per month. AR 1778-1781.

### 3. Dr. Michael Christakos, D.O. (Osteopathy, Physical Medicine)

On August 18, 2017, Dr. Michael Christakos evaluated Plaintiff for claims of low back pain and leg numbness. At that time, Plaintiff reported he had shooting pains and numbness throughout his legs. AR 652. He said his pain level was 4-7/10. Dr. Christakos had the benefit of a lumbar spine x-ray taken July 27, 2017, that documented mild osteoarthritic changes with minimal narrowing of the first through third disc spaces but moderate to severe osteoarthritic changes in the fourth and fifth lumbar spaces with moderate narrowing of the disc spaces. AR 645. He also had the benefit of a lumbar spine MRI dated August 3, 2017, that showed moderate to severe central spinal canal narrowing without contact or deformity with the L3 nerve roots bilaterally, AR 686, and moderate to severe central canal narrowing at L4/5 with disc material contouring the undersurface of the exiting right L4 nerve root without deformity. AR 374, 686.

Dr. Christakos performed a physical examination of Plaintiff on August 3, 2017. He noted lumbar paraspinal tenderness to palpation and a positive Phalen test.[4] The examination also revealed normal posture, no scoliosis or deformity, no muscle spasms, no pain with extension or flexion, no pain with bone percussion, normal lumbar range of motion, normal lower extremity range of motion, normal motor strength, normal

---

[4] A Phalen test is a test used to diagnose carpal tunnel syndrome (CTS), a condition that puts pressure on a nerve in the wrist that can cause tingling, pain, and numbness in your hand. *Phalen's Test-Physiopedia, http://www.physio-pedia.com.*

sensation, symmetrical deep tendon reflexes, negative straight leg raise, and negative Tinel's sign.[5]  AR 654-655.  Dr. Christakos recommended physical therapy, interventional pain procedures, and a home exercise program.  AR 656.  He also encouraged Plaintiff to maintain a healthy body weight and stay active.  AR 656.  Dr. Christakos prescribed Tramadol for breakthrough pain, a nerve conduction study, MRI, and physical therapy.  *Id*.  He also administered a lumbar paraspinal trigger point injection at L4/L5.  AR 656.

Thereafter, Plaintiff participated in two physical therapy sessions in August 2017.  AR 667-677.  He was discharged from PT after he reported that he was able to manage his pain.  AR 677-678.  He was given a TENS unit to use at home and instructions for a home exercise program.  *Id.*

Dr. Christakos saw Plaintiff again on January 24, 2018.  At that appointment, Plaintiff complained of continuing back pain and leg numbness.  AR 786.  Dr. Christakos recommended the following: a bilateral lower lumbar steroid trigger point injection, medial branch block of the lower lumbar spine, continued use of Tramadol which was working well, exercising, losing weight, and wearing wrist splints at night.  AR 790.

Dr. Christakos saw Plaintiff again on February 26, 2018.  He noted that bilateral trigger point injections were not helpful.  AR 1487.  He reordered Tramadol, encouraged Plaintiff to lose weight, and suggested an Integrated Pain Management Plan and further spinal workup if symptoms persist and plaintiff's ability to walk long distances is affected.  AR 1487.

#### 4.   Dr. Timothy Armstrong (Neurologist)

On August 18, 2017, Plaintiff had a neurology consult with Dr. Timothy Armstrong.  AR 691-695.  Dr. Armstrong's examination revealed positive Tinel's and Phalen's signs, normal cervical range of motion, normal motor functioning, intact sensation, normal balance and gait, and a negative straight leg raising test.  AR 692.  Dr.

---

[5] Tinel's sign is another test used in diagnosing carpal tunnel syndrome. *https://www.physio-pedia.com/Tinel%E2%80%99s_Test*

Armstrong performed a nerve conduction study of the upper and lower extremities which revealed normal findings of the right lower extremity, no evidence of polyneuropathy, and mild carpal tunnel syndrome.  AR 694-695.  Dr. Armstrong recommended conservative treatment and advised Plaintiff to wear wrist braces at night.  AR 284.

### 5.   Dr. Xuong Tang (D.O./Pain Management)

Dr. Xuong Tang examined Plaintiff on July 26, 2018.  AR 955-964.  He noted that Plaintiff's MRI showed moderate to severe stenosis but most of his symptoms suggested that he was not a great surgical candidate.  *Id*.  He also noted that the epidural steroid injection was not helpful, the medial branch block failed, and the steroid trigger point injection failed.  *Id*.  On physical examination, he observed tenderness to palpation in the muscles of the low back and decreased extension due to pain.  AR 962.  However, Plaintiff also showed normal flexion of the spine, no scoliosis, normal strength and tone of the paraspinal musculature, no crepitus, tenderness, or effusion, stable joints, intact sensation, and normal range of motion of the extremities.  *Id*.

Dr. Tang recommended cognitive behavioral therapy which Plaintiff declined.  AR 963.  He also recommended a course of Gabapentin, repeat epidural injection, core work and weight loss.  AR 964.  During a follow up appointment on December 6, 2018, Dr. Tang noted that Plaintiff had continued lumbar pain for which he was taking Tramadol.  AR 949.  He recommended Gabapentin again but Plaintiff wanted to wait.  *Id.*  He also recommended acupuncture, exercise, heat and ice, TENS, and cognitive behavioral therapy.  AR 949-950.

### 6.   Dr. David Easley (Consulting Orthopedic Examiner)

On December 18, 2017, Dr. Easley performed an orthopedic evaluation of Plaintiff for low back pain.  AR 398-403.  Dr. Easley noted some tenderness to palpation at the base of the lumbar spine and at the bilateral sacroiliac joints.  AR 400.  He also noted no pain with axial rotation of the trunk and none with axial loading of the spine at the head.  *Id.*  The straight leg raising test was negative at 90 degrees, both sitting and supine.  *Id.*  Range of motion of the back was 70/90 degrees of forward flexion, 10/25 degrees of

extension, and 15/25 degrees of lateral flexion bilaterally.  *Id.*  He also observed that Plaintiff could get into and out of a chair without difficulty and that his gait is normal. AR 401.  He did not require an assistive device to walk across the room.  *Id.*  Dr. Easley's neurological assessment revealed no apparent abnormality.  AR 402.  He did not have the benefit of any diagnostic tests, but his diagnostic impression at the time was "degenerative disc disease of the lumbosacral spine without radiculopathy."  *Id.*

Based on his assessment, Dr. Easley opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for 6 hours of an 8-hour workday; and sit for 6 hours of an 8-hour workday; there are no other postural, manipulative, visual, communicative, or environmental limitations.  AR 402.  At the time of his examination, Dr. Easley did not have the lumbar MRI results.

### 7.   State Agency Consultants (K. Vu DO, Kim Rowlands, M.D.)

The state agency physical consultants opined the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours of an 8-hour work day; sit for 6 hours of an 8-hour work day; frequently climb ramps and stairs; occasionally climb ladders, scaffolds or ropes; frequently balance, kneel, crouch, and crawl; occasionally stoop; and has limited vision, precluding work requiring acute vision for public safety and work with machinery moving left to right.  AR 95-97, 109-110.

### D.   **Vocational Expert's Testimony**

The ALJ asked the vocational expert to assume a person with the same age, education, and work experience as the Plaintiff, with the residual functional capacity to do light work as defined in 20 C.F.R. 404.1567(b), except that: he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for 6 hours of an 8-hour work day, but requires the ability to sit for 3 to 5 minutes after every hour of standing or walking; he can sit for 6 hours of an 8-hour work day; he is unlimited in pushing and/or pulling other than as shown for lifting and carrying; he can frequently climb ramps and stairs; occasionally climb ladders, scaffolds or ropes; frequently balance, occasionally stoop, kneel, crouch and crawl; he has limited vision in the left eye

so he can do no work requiring acute vision for public safety or any left to right conveyor belt work.  AR 20, 78-81.  Additionally, the ALJ asked the vocational expert to assume the person could not drive heavy equipment but can drive a car.  AR 80.  The vocational expert testified that such a person would be able to perform past relevant work as a security guard, as actually performed by Plaintiff and as generally performed in the national economy.  AR 81.

When questioned by Plaintiff's counsel, the vocational expert testified that in her professional experience, the position of security guard allows for a sit/stand option.  AR 86-88.  She further said it is reasonable to assume that a security guard can sit or stand at will for 3 to 5 minutes after every hour of standing or walking.  AR 81.  She acknowledged that the sit/stand option is not in the Dictionary of Occupational Titles, but she based her opinion on her experience and research.  Plaintiff corroborated the expert's opinion by testifying that when he worked as a security guard at a bank, he was able to sit down for approximately 5 minutes of every hour.  AR 88.

## II.    THE ALJ DECISION

### A.    The Sequential Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months.  42 U.S.C. §§ 423(d), 1382(c)(a)(3).  The Social Security regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b).  If not, then at step two the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(c).  If the impairment is severe, at step three the ALJ must determine whether the applicant's impairment or

combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(a)(4)(iii), 416.920(d). If the applicant's impairment meets or equals a listing, he or she must be found disabled. *Id.*

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity ("RFC").[6] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e). Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(g).

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

## B.  Substance of the ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date of October 27, 2016, through his date last insured of March 31, 2019. AR 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: left eye low vision with history of retinal detachment, status post-operative repair and subsequent cataract surgery; degenerative disc disease of the spine; and gout. AR 17. The ALJ found that the Plaintiff's other medically determinable impairments of obesity; obstructive sleep apnea; mild carpal tunnel syndrome and TMJ cause only slight abnormalities that would have minimal effect on his ability to work. AR 17-18. The ALJ further found that the claimant's medically determinable mental impairments of major depressive disorder; anxiety disorder; and history of polysubstance abuse in remission; considered singly and in combination caused no more than minimal limitation in his

---

[6] A claimant's residual functional capacity ("RFC") is the most he can still do in a work setting despite impairments. See, 20 C.F.R. § 404.1545(a).

ability to perform basic mental work and was therefore not severe.  AR 18-19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  AR 19.  Specifically, the ALJ found that Plaintiff did not meet or medically equal Listings 1.04, 2.02, 2.03, 2.04, and 14.09.  *Id.*

Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 1547(b) except:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for six hours in an eight-hour workday, but requires the ability to sit for 3 to 5 minutes every hour of standing or walking; he can sit for 6 hours of an 8-hour workday; he is unlimited in pushing and/or pulling other than as shown for lifting and carrying; he can frequently climb ramps and stairs; occasionally climb ladders, scaffolds or ropes; frequently balance; occasionally stoop, kneel, crouch, and crawl; he has limited vision in the left eye so he can do no work requiring acute vision for public safety or any left to right conveyer belt work.

AR 19-20.  In making his RFC assessment, the ALJ noted he had considered all of Plaintiff's symptoms along with the objective medical evidence and other evidence in the record.

At step four, the ALJ determined that Plaintiff could perform his past relevant work as a security guard.  AR 25.  As such, the ALJ concluded Plaintiff is not disabled as defined in the Social Security Act.  AR 26.

## III.   LEGAL STANDARD OF REVIEW

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court will set aside a denial of benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (*quoting Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).  Substantial evidence is "more than a mere scintilla" and means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *see Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted).  It is a "highly deferential" standard of review.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  However, the Court must consider the entire record, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and it "may not affirm simply by isolating a specific quantum of supporting evidence."  *Garrison v. Colvin*, 759 F3d. 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (internal quotations and citation omitted).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Molina*, 674 F.3d at 1111.  It is not the Court's role to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson*, 359 F.3d at 1193.  Moreover, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ.  *Molina*, 674 F.3d at 1121.

## IV.   DISCUSSION

Plaintiff contends the ALJ erred in three respects: (1) by failing to articulate legally sufficient reasons for rejecting the opinion of Cynthia Sierra, M.D., a treating physician, as to Plaintiff's residual functional capacity; (2) by failing to properly assess Plaintiff's RFC based on the objective medical evidence and other physician opinion evidence; and (3) by failing to articulate "clear and convincing reasons" for rejecting Plaintiff's subjective complaints.  ECF No. 14 at 5-12.  The Court will address each of these arguments in turn.

### A.   The ALJ Properly Considered Dr. Sierra's Opinion Under the Revised Regulations for Evaluating Medical Evidence

On January 18, 2017, the Social Security Administration ("SSA") revised the

regulations that apply to evaluation of medical evidence, effectively abolishing the "treating physician rule" for cases filed on or after March 27, 2017. This changed regulation applies to Plaintiff's case, as it was filed on July 12, 2017. This means that an ALJ no longer must assign a certain weight to a medical practitioner's opinion. Rather, ALJs are now to "consider" the "persuasiveness" of opinions from all medical sources. 20 C.F.R. § 1520c(a).[7]

The ALJ is required to focus on the persuasiveness of a medical opinion or prior administrative finding(s) using the following five factors:

(1) Supportability

(2) Consistency

(3) Relationship with the claimant (including)

    a. Lengthy of treatment relationship

    b. Frequency of examinations

    c. Purpose of the treatment relationship

    d. Extent of the treatment relationship

    e. Examination relationship

(4) Specialization

(5) Other factors

20 C.F.R. § 404.1520c(a)-(c) (2017). Supportability and consistency are the two most important factors to be considered by the ALJ in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain in his decision how persuasive he finds a medical opinion based on these two factors. *Id.* The ALJ may, but is not required to, explain how he considered the other remaining factors,

---

[7] For Social Security applications filed before March 27, 2017, the medical opinion of a treating physician was given controlling weight so long as it was well-supported by medically acceptable clinical and laboratory techniques and was not inconsistent with the other substantial evidence in claimant's medical record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 CFR §§ 404.1527(c)(2)).

unless the ALJ finds that two medical opinions on the same issue are equally well supported and consistent with the record, but are not identical.  20 C.F.R. § 404.1520c(b)(3).

Departing from prior case law, under the new regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The new regulations override the treating physician rule, which automatically gave greater weight to the medical opinions of treating physicians, required clear and convincing reasons for rejecting an uncontradicted medical opinion of a treating physician, and required specific and legitimate reasons supported by substantial evidence in the record for rejecting the contradicted medical opinion of a treating physician.  *Jones v. Saul*, No. 2:19-cv-01273-AC, 2021 WL 620475, at *6-*10 (E.D. Cal. Feb. 17, 2021) (concluding that "the new regulations regarding the evaluation of medical opinion evidence displace the Ninth Circuit's prior precedents implementing the [Treating Physician Rule]").

The Ninth Circuit has not yet addressed whether, and to what extent, ALJs are still held to the "clear and convincing" and "specific and legitimate" standards when rejecting a medical opinion.  *Deborah K. v. Kijakazi*, No. 320CV02065GPCAHG, 2022 WL 486528, at *8 (S.D. Cal. Feb. 16, 2022).  There is a split amongst district courts in the Ninth Circuit as to whether the Circuit's prior case law regarding deference to treating physicians still applies.  *Compare id.*; *Kathy Jean T. v. Saul*, No. 20cv1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."), *with Robert D. v. Kijakazi*, No. 20cv2132-AJB-MSB, 2021 WL 5905734, at *3 (S.D. Cal. Dec. 14, 2021); *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the "specific and legitimate" standard for rejecting contradicted opinions of a treating doctor continues to serve as a "benchmark against which the Court evaluates [the ALJ's] reasoning").

14

This Court "agrees with the numerous district courts that found the treating source rule is inconsistent with the SSA's 2017 regulations, which effectively displace or override it." *Julie R. M. v. Kijakazi*, No. 20cv1608-LL-MDD, 2021 WL 4993034, at *4 (S.D. Cal. Oct. 26, 2021); *see Allen T. v. Saul*, No. 19-1066, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.' The Court defers to the new rules here.") (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982 (2005)); *see, e.g.*, *Jones*, 2021 WL 620475, at *6–*10; *Joseph Perry B. v. Saul*, No. SACV 20-1196-KS, 2021 U.S. Dist. LEXIS 59742, at *7 (C.D. Cal. Mar. 29, 2021).[8]   Accordingly, the Court will address the ALJ's evaluation of the medical opinions at issue here under the 2017 regulations.

Here, the ALJ properly determined that Dr. Cynthia Sierra's opinion as to Plaintiff's RFC is not "persuasive."  AR 24.  On January 20, 2019, Dr. Sierra completed a Residual Functional Capacity (RFC) questionnaire.  AR 1778-1781.  Her responses indicated that Plaintiff could sit, stand, and walk for less than 2 hours total in an 8-hour workday, would constantly experience pain or other symptoms severe enough to interfere with attention and concentration, and would likely miss more than 4 days of work a month.  *Id*.  She diagnosed Plaintiff as having lumbar spondylosis with "shooting pain in bilateral lumbar radiating down both legs, pain 4-7/10 daily, precipitated by walking or sitting long periods."  AR 1778.  She noted the objective findings as being scoliosis, lumbar spondylosis, and disc herniation on MRI with a slow gait and decreased range of

---

[8] The Court is particularly persuaded by the court's analysis in *Jones*, which actually considered and analyzed whether the new regulations are valid and should be afforded deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  2021 WL 620475, at *6–*10.  *Jones* concluded that the new regulations were valid, should be entitled to deference, and overrode the prior Ninth Circuit caselaw establishing the Treating Physician Rule.  *Id.*

motion.  *Id.*

The ALJ determined that Dr. Sierra's opinion was not well-supported by or consistent with the record.  AR 24.  As noted in the new regulations, supportability and consistency are the two most important factors to be considered by the ALJ in determining the persuasiveness of a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  The other factors do not have to be discussed in every situation.  *See* 20 C.F.R. § 404.1520c(b)(3).

Discussing inconsistency, the ALJ gave a few reasons for why he found Dr. Sierra's opinion inconsistent.  First, he noted that her opinion was "inconsistent with findings on physical examinations, documenting some abnormalities such as tenderness to palpitation of the spine and some pain with motion, but otherwise mostly normal findings such as normal range of motion, symmetrical deep tendon reflexes, negative straight leg raise testing, intact sensation, and normal balance and gait."  For support, the ALJ pointed to progress notes from Dr. Christakos, dated August 3, 2017, where Plaintiff was observed as follows:

- Normal gait and posture,
- No scoliosis
- No pain with extension or flexion,
- No pain with bone percussion,
- Lumbar range of motion within normal limits
- Lower extremity range of motion normal for age,
- 5/5 motor strength in lower extremities,
- No muscle atrophy in lower extremities,
- Intact sensation.

AR 24 (citing Exhibit 1F/7 (AR 263)).  In addition, the ALJ also pointed to progress notes from Dr. Timothy Armstrong, a neurologist, dated August 18, 2017.  AR 24 (citing Exhibit 5F/281 (AR 692)).  Dr. Armstrong's examination revealed positive Tinel's and

Phalen's signs, normal cervical range of motion, normal motor functioning, intact sensation, normal balance and gait, and a negative straight leg raising test.  AR 692.  Dr. Armstrong performed a nerve conduction study of the upper and lower extremities which revealed normal findings of the right lower extremity, no evidence of polyneuropathy, no evidence of right lumbosacral radiculopathy and mild carpal tunnel syndrome.  AR 694-695.  Finally, the ALJ pointed to progress notes from Dr. Xuong Tang from a comprehensive pain consultation on July 26, 2018.  AR 24 (citing 5F/551)).  Dr. Tang noted that Plaintiff "display[ed] no overt pain behaviors," that his "cervical, lumbar spine, ribs and pelvis reveals no scoliosis," normal strength and tone of the paraspinal musculature, full hip joint range of motion without pain and negative stress tests bilaterally, no crepitus, tenderness or effusion of the bilateral shoulders, elbows, wrists, knees and angles, and stable joints and normal range of motion.  AR 962.  Second, on inconsistency, the ALJ also noted that Dr. Sierra's opinion of Plaintiff's limited functional capacity is also inconsistent with other physicians who recommended primarily conservative treatment, including physical therapy, weight loss, home exercise, medical management, acupuncture, and spinal injections.  AR 24 (citing various testimony); *see* AR 264, 358, 377, 790, 944, 963-964, 1051.

In addition, the ALJ addressed the supportability of Dr. Sienna's opinion.  He noted that "Dr. Sierra noted the claimant has a slow and antalgic gait, but this is not supported by the medical records."  AR 24.  For support, the ALJ cited to various records from Kaiser Permanente, suggesting otherwise.  *See* AR 643 (noting normal deep tendon reflex, motor strength and sensation, including heel and toe gait and full range of motion for hips and knees without pain); AR 654 (normal gait); AR 692 (noting normal balance and gait); AR 743 ("Gait: non-antalgic"); AR 788 (noting no gait changes); AR 963 (noting narrow based gait but wnl (within normal limits)); AR 985 (noting Plaintiff was "ambulatory with gait steady").  The ALJ found that "Dr. Sierra also noted that the claimant complained of shooting pain in his bilateral lower lumbar spine radiating down both legs, which is contradicted by a nerve conduction study indicating no

polyneuropathy of the lower extremities." AR 24. The nerve conduction study conducted by Dr. Armstrong on August 18, 2017 concluded that "[t]here is no evidence of a polyneuropathy" of the lower extremities. AR 694-95.

The ALJ also observed that, based on the medical record and the issues with supportability and inconsistency, Dr. Sienna may have relied heavily on Plaintiff's subjective reports as to his pain level and difficulty with sitting and walking. AR 24. The ALJ is permitted to consider "other factors" that he or she deems relevant when determining whether a physician's opinion is persuasive. 20 C.F.R. § 404.1520c(a)-(c).

Thus, the Court concludes that the ALJ properly followed what was required of him under the regulations in finding that Dr. Sienna's opinion was not persuasive and finds no error on this ground.

### B. The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

The ALJ is the sole determiner of a claimant's RFC after consideration of "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 404.1546(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity."); *McLeod v. Astrue*, 640 F.3d 881, 884-885 (9th Cir. 2011). "In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). "An ALJ is not required to adopt any one medical opinion, but instead must translate Plaintiff's limitations into work-related restrictions and functions." *Ly v. Colvin*, No. 1:13-CV-01242-SKO, 2014 WL 4795044, at *11 (E.D. Cal. Sept. 25, 2014) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174–1176 (9th Cir. 2008)).

What the ALJ is not permitted to do is to make his own determinations and

interpretations of the medical evidence.  *See, e.g.*, *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Javier A. G. v. Saul*, No. SACV 19-2341 PVC, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

Here, the ALJ properly considered all the medical and other evidence in making his assessment of Plaintiff's RFC.  He did not make his own independent interpretations of raw medical data but instead he weighed the various doctors' opinions, as he is permitted to do.

The ALJ did not wholesale adopt the opinion of any one physician.  In fact, he found Plaintiff more limited in function than three of the other doctors who examined him.  Specifically, on December 18, 2017, Dr. Easley's orthopedic evaluation of Plaintiff for low back pain noted some tenderness to palpation at the base of the lumbar spine and at the bilateral sacroiliac joints.  AR 400.  However, he also noted no pain with axial rotation of the trunk and none with axial loading of the spine at the head.  *Id.*  The straight leg raising test was negative at 90 degrees, both sitting and supine.  *Id.*  He also observed that Plaintiff could get into and out of a chair without difficulty and that his gait is normal.  AR 401.  Based on his assessment, Dr. Easley opined that Plaintiff could perform a full range of medium work—that is, he can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for 6 hours of an 8-hour workday; and sit for 6 hours of an 8-hour workday; there are no other postural, manipulative, visual, communicative, or environmental limitations.  AR 402; *see* Social Security Ruling (SSR) 83-10.  The State Agency consultants, K. Vu, D.O. and Kim Rowlands, M.D. likewise determined Plaintiff could do medium work, but with postural, visual, and environmental limitations.  AR 95-97, 109-110.

By contrast, the ALJ found Plaintiff could only perform a reduced range of light work.  AR 19-20.  In so finding, the ALJ considered the opinions of Drs. Easley, Vu, and Rowlands only partially persuasive because they were reasonably consistent with the objective medical evidence in the record and the recommendations for conservative treatment, but they did not sufficiently account for Plaintiff's subjective symptoms or the abnormal lumbar MRI.  AR 24-25; 955-964.  Thus, contrary to Plaintiff's assertions (ECF No. 14 at 7), the ALJ's RFC assessment is not his own lay opinion.  Rather, it was guided by the medical opinions of the various physicians of record.

Plaintiff's suggestion that the ALJ should have more fully developed the record by obtaining additional medical consults and expert testimony is not tenable.  In Social Security cases, the ALJ does have a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  However, this duty is triggered by "ambiguous evidence" or when the ALJ finds that "the record is inadequate to allow for proper evaluation of the evidence."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The record here was neither ambiguous nor inadequate.  The record consisted of over 1500 pages of medical records, AR 258-1781, and four different physicians opined on Plaintiff's functional limitations.  Three of them found Plaintiff less limited than the ALJ.  Plaintiff was represented at the hearing and his counsel never suggested the need for supplemental evidence.  AR 30-90.

Thus, the Court concludes that the ALJ properly arrived at his RFC determination based on the medical opinions in the record and finds no error on this ground.

## C.   The ALJ Properly Assessed Plaintiff's Subjective Symptom Testimony

The ALJ must engage in a two-step analysis in determining how much to credit the claimant's symptom testimony.  First, the claimant must show that the impairment can be expected to cause some degree of pain, or other symptoms alleged, and second, if there is no evidence of malingering, the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678 (citing *Garrison,* 759 F.3d at 1014-15). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The ALJ is required to "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* A "line-by-line exegesis of the claimant's testimony" is not required, but the ALJ must do more than offer "non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d 1266, 1268, 1277 (9th Cir. 2020).

Here, the ALJ stated the following with regard to Plaintiff's testimony:

> The claimant testified he stopped working due to his vision problems. He also said his medications for gout and back pain made him feel sick, dizzy, and sleepy. The claimant indicated he generally only takes Ibuprofen 800mg for pain, but also takes Tramadol when his pain gets to about an 8 out of 10. During his testimony, the claimant stated that he "doesn't do much," but then went on to testify that he and his wife assist their daughter with the care of their grandchildren ( approximately 8 and 10 years old); he picks them up from home and drives them to school; picks them up later from school; helps his wife watch them in the afternoon; and then drops them off at his daughter's house after she gets home from work. He also assists with household chores, shops at stores, and pays bills. He said he elevates his legs because his feet swell up, but he does not use an assistive device. (Hearing Testimony).

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 20-21. The ALJ then proceeds to spend the next three pages explaining the reasons

for why he found Plaintiff's testimony not to be entirely consistent.

First, the ALJ discusses the statements Plaintiff made regarding his vision, back pain, and gout.  AR 21-23.  The ALJ stated:

> The claimant was treated by a number of physicians for his allegations of left eye vision loss, back pain, and gout. Although the claimant exhibited some abnormal findings during physical examinations, these findings are not fully consistent with his allegations of completely disabling symptoms. In addition, the claimant's physicians recommended only conservative treatment for his impairments. Nevertheless, the undersigned considered the claimant's abnormal findings during physical examinations and the multiple conservative treatment modalities pursued by the claimant in determining the residual functional capacity determined herein.

AR 21.  Regarding Plaintiff's vision, the ALJ noted that although he continued to report limited vision in his left eye, his ophthalmologist Dr. Custis did not recommend any further treatment, and Plaintiff testified he sees well enough to drive his grandchildren in a car.  AR 21 (citing AR 368-369).  As for his gout, the ALJ noted that Plaintiff did seek treatment for that condition in 2017 and 2018, it appears his doctors generally managed that condition effectively with medication.  AR 22-23 (citing AR 626, 628, 809-811).  Regarding back pain, the ALJ noted that "[o]bjective imaging is not fully consistent with the claimant's allegations of disabling back pain."  AR 21.  The ALJ went on to go through Plaintiff's imaging x-rays and MRI and noted the findings.  AR 21 (citing AR 260; 645; 682-83).  The ALJ continued to review and cited to notes from throughout the record regarding Plaintiff's back pain.  AR 21-23 (citing notes and findings with Dr. Christakos, Dr. Armstrong, Dr. Kim, Dr. Tang, and Dr. Easley from administrative record).  As previously noted, his doctors treated him conservatively with recommended exercise, weight loss, physical therapy, a TENS unit, and pain medication.  *Id.*  Plaintiff participated in only two physical therapy sessions in August 2017.  AR 667-678.  He was discharged from PT after he reported he was able to manage his pain.  *Id.*

Finally, the ALJ explained that Plaintiff's self-reported activities were inconsistent with his complaints of disabling limitations.  AR 23.  He noted that Plaintiff could climb

two flights of stairs without chest pain or significant dyspnea, that he exercised for 30 minutes a day, three days a week, that he and his wife cared for their granddaughters while their daughter was at work, and he drove them to and from school.  AR 23 (citing AR 450, 642, 667-668).  The ALJ also observed that Plaintiff helps with household chores, shops, and pays bills.  AR 29, 69; s*ee Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding that the ALJ's citation to the medical record provided specific, clear, and convincing reasons for why the claimants testimony was not as severe as he claimed and his reported daily activities further supported the decision); *Molina*, 674 F.3d at 1104 (even where activities show some difficulty functioning, they may be grounds for discounting the claimant's testimony to the extent that they contradict claims of total disability).

Thus, the Court finds that the ALJ provided sufficient reasons for discounting certain of Plaintiff's subjective testimony.  Moreover, the ALJ validly concluded that Plaintiff's daily activities contradicted his claims of disability.  Consequently, the ALJ considered and properly discounted Plaintiff's complaints of disabling limitations.  The Court finds no error on this ground.

## V.      CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment, and directs the Clerk to enter Judgment affirming the decision of the Commissioner, and dismissing the action with prejudice.

**IT IS SO ORDERED.**

Dated:  March 28, 2022

Hon. Nita L. Stormes
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28